D. A. SHUFELDT ET AL., APPELLEES, v. M. E. GANDY, APPELLANT.

1. **Injunction**: PETITION. A party who seeks to enjoin a judgment on the ground that it was obtained by fraud and misrepresentation, must state the facts constituting the grounds for relief.

2. ——: FRAUD. Where a creditor, in dealing with persons unaccustomed to business, assures them that if there is any mistake that he will correct it when they come to pay the notes then being given, and they rely upon his honesty and representations, and are thereby induced to confess judgment for a greater sum than is actually due, a court of equity may grant relief.

3. Evidence in behalf of both plaintiff and defendant examined, and found to be too indefinite to warrant a decree for either.

APPEAL from the district court of Richardson county. Heard below before APPELGET, J.

*E. W. Thomas*, for appellant, cited: *Hopkins v. Woodward*, 75 Ills., 62. *L., L. & G. R. R. Co. v. Douglas Co.*, 18 Kan., 178. *Capuro v. Builders' Ins. Co.*, 39 Cal., 124. *Hill v. Williams*, 6 Kan., 17. 2 Whart. Ev., Sec. 984. *Kennedy v. Goodman*, 14 Neb., 585.

*Frank Martin*, for appellees, cited: Freeman on Judgments, Sec. 486. *Barthell v. Roderick*, 34 Iowa, 518.

MAXWELL, J.

This is an action to have certain judgments declared satisfied, and to cancel the same and certain mortgages. A decree was rendered in favor of the plaintiffs in the court below, from which the defendant appeals.

The defendant demurred to the petition, and the demurrer being overruled she filed an answer, and evidence was introduced by both parties, which is now before us.

The defendant alleges that the petition fails to state a cause of action, and this is the first question presented. The petition is as follows:

"Said plaintiffs complain of said defendant, and say that on or about the 20th day of July, A.D. 1883, the plaintiff, D. A. Shufeldt, purchased of said defendant two horses, and agreed to pay therefor the sum of $250, and then and there executed to the defendant his note for said amount, and plaintiff M. J. Bush signed said note as his surety; that these plaintiffs have but limited education and no experience in or knowledge of business matters; that the plaintiff, M. J. Bush, was, at the time of signing said note and the renewals thereof, a married woman, and

her husband was in very feeble health, and for that reason she did not want the fact of her signing a note as security for any one else to come to his knowledge, lest it should worry and annoy him, and for the same reason she did not consult any friend or attorney concerning said business, and she informed defendant and plaintiff Shufeldt of said facts, and requested them not to let it be known that she had signed said note as security, and for said reason she did not consult any friend or attorney on said matter. All of which was well known to defendant. Said note was renewed from time to time up to October 11, 1887, and at each renewal defendant added to said note various sums, which she stated to plaintiff was the interest on the original debt; that these plaintiffs are unable to compute interest, which the defendant well knew; and these plaintiffs trusted to defendant to correctly compute and truly state the amount of interest due upon and which should be added to said note upon renewal; that these plaintiffs never received any other consideration from the defendant for said note or the renewal thereof, or the judgments hereafter mentioned, than the $250, the agreed value of said horses, and the only consideration for the judgments hereinafter mentioned was said original purchase of said horses.

"That defendant, well knowing all of said facts, on the 11th day of October, 1887, wrongfully and fraudulently contriving and intending to cheat and swindle plaintiffs, threatened to begin proceedings to collect the amount then claimed to be due, unless plaintiffs would give defendant a new note or notes; that defendant claimed there was then due on said original indebtedness and interest the sum of about $800; that these plaintiffs protested that it was impossible there could be any such sum due, and refused to sign any other note for any such amount; that defendant assured plaintiffs the amount was correct, and that she was there in a hurry, but that if plaintiffs would sign notes for said amount, and it should

be subsequently ascertained to be too much, the same could be corrected; that by reason of such assurance, and to avoid said claims being sued, which defendant threatened to do, and also threatened to make large expense and trouble for plaintiffs in such suit if they did not sign said notes, and because plaintiffs believed that the correct amount could be ascertained and agreed upon when they came to be paid, and that only the amount lawfully due them could be collected or would be demanded, these plaintiffs then and there signed what they were informed and believed were notes to the amount of nearly $800.

"Plaintiffs aver that they had paid to defendant before that date, on such indebtedness, the sum of $383.62, an itemized account of which is attached and made a part of the petition, and said defendant promised that on the final settlement of said indebtedness said payments should be credited on said debt.

"Plaintiffs further say that said defendant wrongfully and fraudulently combined and colluded with one B. F. Berry, who was then a justice of the peace in and for said county, and by fraudulently and falsely stating to plaintiffs that they were signing notes for said amount of about $800, caused them to sign confessions of judgment against themselves and in favor of defendant, in four separate judgments for the sum of $197 each and costs; that these plaintiffs did not know that said Berry was a justice of the peace, nor that they were signing confessions of judgments; that the whole of said business, including the signing of said judgments, was done and conducted in the private office of the defendant, and was managed by J. L. Gandy, the husband and agent of defendant M. E. Gandy, and in her name; that said defendant has taken transcripts of said judgments and filed them in the office of the clerk of this court; that these plaintiffs did not know that said claim was merged in judgments, or that defendant claimed to have judgment against them, until

sometime about the 10th day of February, 1888; that at the time of giving some of the renewals of said note, plaintiff Shufeldt gave as security a chattel mortgage on two horses, one wagon, set of double harness, a plow, and corn planter.

"Plaintiffs aver that said debt is paid, and said mortgages and judgments should be canceled. Wherefore plaintiffs pray the court to cancel said mortgages and judgments, and for such other and further relief as may be just."

An itemized statement of payments is attached to the petition, and admitted by Dr. Gandy to be correct. The petition, however, fails to show payment in full, or to state such facts as would justify a court of equity in enjoining the judgments. It may be, however, that the plaintiffs are entitled to equitable relief. They both testify that the only consideration for the four notes of $197 each, upon which the judgments were rendered, was a span of horses which cost $250; that Dr. Gandy had assured them in substance that if there was any mistake he would correct it, and that they regarded him as an honest man, and relied upon his statements, and for that reason they were induced to sign the notes in question, and also the docket of the justice. If these statements should be found to be true, and that, in consequence of relying upon Gandy's representations, he had obtained judgments in excess of the amount due to him, a court of equity no doubt in a proper case would grant relief.

Dr. Gandy testifies that the consideration for these notes was borrowed money, and a doctor's bill of $24, and he gives the amounts and dates when the money was borrowed. In this he is corroborated to some extent by his daughter. He testified that these amounts appeared on his book of original entries. Unfortunately, however, this book was not produced in court, so that the entries could speak for themselves. The plaintiffs also failed

State v. Kaso.

to produce certain notes surrendered by Gandy upon the giving of new notes, and even objected to the introduction of such notes in evidence. These canceled notes, if submitted to a court or jury would no doubt tend to explain the true origin of the debt, and whether the judgments sought to be enjoined in this case were for borrowed money with interest added, or, as the plaintiffs claim, for a different consideration.

As neither the petition nor the evidence is sufficient to justify the cancellation of the judgments and chattel mortgages, the decree of the court below is reversed, and the cause remanded to the district court, with leave to the plaintiff to amend the petition within thirty days, and for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.